United States District Court
Southern District of Texas
**ENTERED**
June 12, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LUIS PALAFOX, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:22-CV-73 |
| | § | |
| FLAVIO EDUARDO ZAMUDIO, JR., | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATIONS OF
## THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Luis Palafox, Jr. has filed a Motion, Supplemental Motion, and Amended Supplemental Motion for Default Judgment against Defendant Flavio Eduardo Zamudio, Jr. (Dkt. Nos. 18, 20, 26). United States District Judge Marina Garcia Marmolejo referred the motion to the Undersigned for a Report and Recommendations.

For the reasons explained below, the Court should grant Plaintiff's Motion for Default Judgment as to liability and, based on the evidentiary hearing that the Undersigned held, award damages of $635,000.

## I.     BACKGROUND

On July 28, 2022, Plaintiff Luis Palafox, Jr. filed a complaint against Flavio Eduardo Zamudio, Jr. for damages that Plaintiff suffered after being struck by Defendant's vehicle while running. (Dkt. No. 1). According to Plaintiff's Complaint (the "Complaint"), on November 17, 2021, Plaintiff was running in Laredo, Texas along Country Club Drive, and Defendant was driving on Country Club Drive. *Id.* at

2. Defendant lost control of his Peugeot vehicle and struck Plaintiff. *Id.* Defendant fled the scene. *Id.* Plaintiff suffered "severe injuries," and underwent medical treatment for his injuries. *Id.* Plaintiff alleges that Defendant's negligence proximately caused the collision and resulting injuries and damages to Plaintiff. *Id.* In support of his negligence allegation, Plaintiff alleges the following negligent acts and omissions by Defendant:

    a.  Improper Lookout;

    b.  Inattentive to Circumstance/Condition;

    c.  Improper Evasive Action;

    d.  Improper Lane Change;

    e.  Unsafe Operation of Vehicle;

    f.  Failure to Drive in Single Lane;

    g.  Improper Speed; and

    h.  Driving While Intoxicated.

*Id.* at 2–3.

    Plaintiff also alleges that Defendant's acts and omissions constitute gross negligence for which exemplary damages should be imposed. *Id.* at 3. Plaintiff seeks liquidated damages in the amount of $144,853.04.[1] (Evidentiary Hearing on May 10, 2023 at 3:02). Plaintiff also seeks unliquidated damages in the amount of $4,550,000

---

[1] In Plaintiff's Motion for Default Judgment, he sought liquidated damages in the amount of $147,160.93. (Dkt. No. 18). At the evidentiary hearing on May 10, Plaintiff advised that the correct amount was $144,853.04. Additionally, although Plaintiff requested court costs in the original Motion, he advised at the evidentiary hearing that he was no longer seeking court costs. (Hrg. at 3:33).

in the form of:

     a.  Past and Future Pain and Suffering;

     b.  Past and Future Mental Anguish;

     c.  Past and Future Loss of Enjoyment of Life due to Physical Impairment; and

     d.  Future Medical Expenses.

(Dkt. No. 1 at 3–4).[2]

After being served with summons and a copy of the Complaint on August 11, 2022, Defendant "did not file a responsive pleading or otherwise defend the suit." (Dkt. No. 18 at 1). On January 18, 2023, Plaintiff filed a Request for Entry of Default. (Dkt. No. 15). That same day, the Clerk filed an Order on Entry of Default. (Dkt. No. 16). On January 30, 2023, Plaintiff filed his Motion for Default Judgment. (Dkt. No. 18). On February 28, 2023, the Undersigned ordered Plaintiff to supplement his motion for default judgment to include an adequate discussion of whether default judgment is both procedurally appropriate and substantively warranted in this case. (Dkt. No. 19). On March 1, 2023, Plaintiff filed a Supplemental Motion for Default Judgment addressing most of the *Lindsey* factors.[3] (Dkt. No. 20). In advance of the evidentiary hearing, Plaintiff filed his witness and exhibit lists, along with exhibits, on May 8, 2023. (Dkt. No. 22).

The hearing was held on May 10, 2023. (Minute Entry dated May 10, 2023). Pursuant to the Undersigned's oral order at the hearing, Plaintiff filed redacted

---

[2] In Plaintiff's Motion for Default Judgment, he sought unliquidated damages in the amount of $7,200,000. (Dkt. No. 18). At the evidentiary hearing on May 10, Plaintiff advised that the correct amount was $4,550,000. (Evidentiary Hearing on May 10 at 3:48-3:50).
[3] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

exhibits on May 12, 2023. (Dkt. No. 24). On May 16, 2023, the Undersigned ordered Plaintiff to file a second supplement to the Motion for Default Judgment. (Dkt. No. 25). Plaintiff filed the second Supplemental Motion for Default Judgment on May 17, 2023. (Dkt. No. 26).

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 55 allows the Court to enter default judgement only after a Clerk's entry of default. Fed. R. Civ. P. 55. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *BBVA USA v. Hall*, No. 5:19-CV-99, 2020 WL 9814212, at *1 (S.D. Tex. Dec. 18, 2020) (citing *United States ex. rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). A default judgment is a "drastic remedy, not favored by the Federal Rules, and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).

The decision to grant default judgment is left to the sound discretion of the district court. *Sindhi v. Raina*, 905 F.3d 327, 330–31 (5th Cir. 2018). In determining whether default judgment should be granted, courts must (1) "consider whether entry of default judgment is appropriate under the circumstances;" and (2) "assess the merits of the plaintiff's claims and find a sufficient basis in the pleadings for the judgment." *J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-CV-92, 2018 WL 375391, at *1 (S.D. Tex. Jan. 11, 2018).

4

"If the court determines that default judgment should be granted, the court must also determine the appropriate amount of damages." *People's United Equipment Finance Corp. v. Northern Yankee, LLC*, No. H-17-3528, 2018 WL 4334056, at *2 (S.D. Tex. June 6, 2018). Generally, damages should not be awarded without a hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is the plaintiff's burden to provide an evidentiary basis for the damages he seeks. *Hall*, 2020 WL 9814212 at *1.

### III.   ANALYSIS

### A. Is Default Judgment Appropriate?

For the reasons below, the Undersigned concludes default judgment is appropriate under the circumstances.[4]

The factors relevant to this inquiry include: "(1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Guerrero*, 2018 WL 375391 at *1. (citing *Lindsey*, 161 F.3d at 893). Additionally, the Court must consider whether Defendant is a minor, incompetent, or

---

[4] Plaintiff has satisfied the jurisdictional prerequisites. The Court has subject matter jurisdiction over Plaintiff's claim through diversity of citizenship. Plaintiff is a citizen of Texas. Defendant is a citizen of Mexico, and he is not a lawful permanent resident. Plaintiff's damages amount to more than $75,000. *See* 28 U.S.C. § 1332(a); *see also* Dkt. Nos. 1, 5, 6. Venue is proper because all or a substantial part of the events giving rise to this lawsuit occurred in Laredo, Texas, Webb County. 28 U.S.C. §§ 1391(b)(2), 124(b) (including Webb County in the Southern District of Texas).

a military servicemember. *Bank of N.Y. Mellon Tr. Co., NA v. Hancock*, No. 5:19-CV-270-H-BQ, 2020 WL 2989023, at *2 (N.D. Tex. June 4, 2020) (citations omitted).

Here, Plaintiff has shown that the *Lindsey* factors weigh in favor of entering default judgment. First, no material issues of fact exist when Defendant fails to file a responsive pleading. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Second, there is substantial prejudice to Plaintiff's interest in pursuing his rights resulting from Defendant's failure to respond. *See Insurance Co. of the West v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *1 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default have been clearly established due to Defendant's failure to answer or defend. *See Guerrero*, 2018 WL 375391 at *2. Fourth, there is no evidence before the Court indicating that Defendant's silence is the result of a good-faith mistake or excusable neglect. *Id.* (citing *Lindsey*, 161 F.3d at 893). Fifth, "the harshness of default judgment is mitigated as time passes without an appearance or filing from an opposing party," which in this case has been over nine months. *Id.* Sixth, the Undersigned is unaware of any facts which would give rise to good cause to set aside the default if challenged by Defendant. *Id.*; *see also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (Fifth Circuit upheld district court's grant of default judgment after defendant failed to respond to summons within forty days).

Finally, Defendant is not a minor, an incompetent person, or a military servicemember. (Dkt. Nos. 11-1, 26-A). Regarding Defendant's military status,

Plaintiff's attorney, Averie Maldonado, swore in an affidavit that Defendant "is not in the military service of the United States, as shown by the affidavit of Joseph Gullota." (Dkt. No. 11-1). In his affidavit, Mr. Gullota states that pursuant to the Servicemembers Civil Relief Act (SCRA) he investigated and determined that "FLAVIO EDUARDO ZAMUDIO" is not in Active Duty Status. (Dkt. No. 11-2 at 1). Defendant's name is Flavio Eduardo Zamudio, *Jr*.

Nonetheless, Plaintiff has set forth grounds for belief that Defendant would not qualify for the protections accorded under the SCRA which is intended to protect the rights of persons in military service. *See* 50 U.S.C. § 3931 (titled protection of servicemembers against default judgments). Plaintiff asserts that Defendant is neither a U.S. citizen nor a lawful permanent resident. (Dkt. No. 6). Title 10, United States Code, Section 504 defines persons not qualified to enlist in any armed forces to include persons who are neither a citizen nor a lawful permanent resident. Because Defendant would not qualify to enlist in the armed forces, there are grounds to believe Defendant would not qualify for the protections under the SCRA.

For these reasons, an entry of default judgment is appropriate here. *See Rogers v. Hartford Life & Acc. Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999) (the policy against default judgment is "counterbalanced by considerations of social goals, justice and expediency").

### B.  Is There a Sufficient Basis in the Pleadings?

For the reasons below, the Undersigned concludes there is a sufficient basis in the pleadings to establish Defendant's liability.

7

An entry of default judgment requires a "sufficient basis in the pleadings" to establish a defendant's liability. *Nishimatsu*, 515 F.2d at 1206. By defaulting, a defendant is deemed to admit all "well-pleaded allegations" in the complaint but is "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206). To determine whether an allegation is "well-pleaded," the Fifth Circuit looks to Federal Rule of Civil Procedure 8, which governs the sufficiency of a complaint. *Id.* at 498. Under that standard, "[d]etailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (cleaned up).

Because Plaintiff asserts claims of negligence and gross negligence against Defendant, the Undersigned must look to Texas law to determine the sufficiency of the Complaint. Each claim is discussed in the paragraphs below.

### 1. Ordinary Negligence

The Complaint sufficiently alleges a claim of ordinary negligence. "Under Texas law, [ordinary] negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997).

### (a) Legal Duty

First, the Complaint alleges Defendant owed a legal duty to Plaintiff. Whether a legal duty exists is a question of law. *Trammell Crow Cent. Tex., Ltd. v. Gutierrez*,

8

271 S.W.3d 238, 246 (Tex. 2008). Texas common law and public policy impose a duty on motorists to act with ordinary care when driving. *See generally Ciguero v. Lara*, 455 S.W.3d 744, 748 (Tex. App.—El Paso 2015, no pet.) (internal citations omitted); *Hatcher v. Mewbourn*, 457 S.W.2d 151, 153 (Tex. App.—Texarkana 1970, writ ref'd n.r.e.) ("Summed up broadly, public policy imposes a duty on a motorist when operating a vehicle on a public street to be alert and on watch for all that affects safe operation and is normally visible to him in the exercise of due care"). Here, the Complaint alleges Defendant was driving his vehicle on Country Club Drive when Plaintiff was running on Country Club Drive. (Dkt. No. 1 at 2). Therefore, Defendant owed a legal duty to Plaintiff to act with ordinary care when he was driving his vehicle on Country Club Drive.

### (b) Breach of Duty

Second, the Complaint alleges Defendant breached his duty to act with ordinary care when driving. A person has breached his duty when he fails to exercise reasonable care. *Obregon v. United States*, No. 5:17-CV-30, 2018 WL 6179507 (S.D. Tex. Nov. 21, 2018), *aff'd*, 791 Fed. App'x 458 (5th Cir. 2019). Here, the Complaint alleges Defendant failed to exercise reasonable care when driving his vehicle on Country Club Drive. (Dkt. No. 1 at 2–3). It lists several acts and omissions committed by Defendant including improper lookout, inattentive to the circumstances, failure to take proper evasive action, improper lane change, failure to operate his vehicle safely, failure to drive in a single lane, improper speed, and driving while intoxicated. (*Id.*).

Therefore, Defendant breached his duty to act with ordinary care when driving his vehicle on Country Club Drive.

### (c) Injury and Proximate Cause

Third, the Complaint alleges that Plaintiff fractured his tibia in the right and left legs, fibula in the right leg, humerus in the left arm, and right clavicle. (*Id.* at 2). Because Plaintiff suffered actual injuries, the remaining question is whether the Complaint shows that Defendant's breach proximately caused the injuries. It does.

Proximate cause consists of two sub-elements: (1) cause in fact and (2) foreseeability. *Windrum v. Kareh*, 581 S.W.3d 761, 777 (Tex. 2019). Cause in fact is established when (a) the defendant's act or omission was a substantial factor in bringing about the injuries, and (b) without the act or omission, the harm would not have occurred. *Id.* Foreseeability exists if the defendant should have anticipated the dangers his act or omission creates for others. *Hulsey v. Attalla*, No. 01-18-00180-CV, 2019 WL 3484082, at *6 (Tex. App.—Houston [1st Dist.] Aug. 1, 2019, no pet.) (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)). To establish proximate cause in a personal injury case, a plaintiff typically alleges the defendant's conduct caused an event and that the event caused the plaintiff to suffer injuries for which compensation in damages should be paid. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732 (Tex. 1984). "It is this causal nexus between the conduct of the defendant and the event being sued upon that is admitted by default." *Id.*

Here, the Complaint shows a causal nexus between Defendant's conduct and the November 2021 collision. Defendant's failure to act with reasonable care when

10

driving caused him to collide into Plaintiff, and the collision caused Plaintiff to suffer multiple bone fractures. Therefore, Defendant's breach proximately caused Plaintiff's injuries.

Because the Complaint alleges Defendant owed Plaintiff a legal duty; Defendant breached his duty; Plaintiff suffered actual injuries; and Defendant's beach proximately caused Plaintiff's injuries, the Complaint alleges a claim of negligence.

### 2. Gross Negligence

The Complaint sufficiently alleges a claim of gross negligence. Gross negligence requires a plaintiff to prove that (1) "when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others," and (2) "the defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.011(11). "Gross negligence consists of both objective and subjective elements." *U-Haul Int'l v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). "Under the objective component, 'extreme risk' is not a remote possibility or a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *Id.* "The subjective prong requires that the defendant knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its act." *Id.*

Here, the Complaint alleges that Defendant committed multiple negligent acts while under the influence of alcohol which created an extreme risk of danger, and Defendant knew of that risk but was consciously indifferent to Plaintiff's safety. (Dkt. No. 1 at 2–3). The facts support this allegation. Defendant's conduct created an extreme and likely risk of colliding into a pedestrian. By fleeing the scene, it can be inferred that Defendant was consciously indifferent to Plaintiff's safety. Thus, the Complaint alleges a claim of gross negligence.

Accordingly, the Undersigned recommend the District Court find there is a sufficient basis in the pleadings to establish Defendant's liability.

### C. What is the Appropriate Relief?

For the reasons below, the Undersigned concludes the appropriate relief is $635,000, consisting of the following awards: $0 for economic damages, $410,000 for noneconomic damages, exemplary damages of $225,000, plus prejudgment interest calculated at a rate of 8.25% per annum, and postjudgment interest at the rate applicable from the date Judgment is entered by the District Court.

#### 1. Economic Damages

Plaintiff is entitled to $0 for economic damages. Economic damages typically include damages that compensate an injured party for lost wages, lost earning capacity, and medical expenses. *Golden Eagle Archery v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). Here, Plaintiff does not seek any amount for lost wages or lost earning capacity. Instead, Plaintiff seeks to recover medical expenses in the past and future. However, he fails to meet his burden to recover such expenses for two reasons.

First, the Complaint makes no demand for medical expenses in the past. *See* (Dkt. No. 1 at 3–4). Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. Civ. P. 54(c). That is, the complaint limits the amount awarded in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975). Because the Complaint fails to demand any relief for medical expenses in the past, Plaintiff cannot be awarded any amount for medical expenses in the past.

Second, Plaintiff does not meet the requirements to recover an award for medical expenses in the future. To sustain an award for medical expenses in the future, "the plaintiff must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care." *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). An award for medical expenses in the future can be "based upon the nature of the injuries incurred together with the medical treatment rendered, and the injured party's condition at trial." *Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied).

Here, Plaintiff provided evidence showing that Plaintiff's injuries have healed, and any lingering pain he feels does not require medication or other treatment. The evidence regarding Plaintiff's injuries, the medical treatment he received, and his recovery is as follows:

The medical records show that Plaintiff sustained fractures to his left arm, both legs, clavicle, and a laceration to his left shoulder. (Dkt. No. 24-4 at 3). Plaintiff

underwent a surgery involving the placement of permanent metal plates and screws to repair his arm and leg. (Hrg. at 2:34, 2:37; Dkt. No. 24-11). Plaintiff testified that he has not sought treatment from a pain management doctor despite feeling some pain in his ankle when he runs, and he affirmed that the metal parts do not interfere with his running or other aspects of his life. (Hrg. at 2:44, 2:50, 2:53). Luis Palafox ("Plaintiff's Father") testified that the surgery went well. (Hrg. at 3:23). He stated that Plaintiff told him he wanted to be strong, and he wanted to handle any pain without medication. (*Id.*). He further stated that Plaintiff does not appear to be affected by his injuries. (Hrg. at 3:25). Plaintiff walks normal, and he stopped attending physical therapy about six months ago based on the doctor's recommendation that he no longer needed it. (Hrg. at 3:25-3:27). Mari Palafox, Plaintiff's mother, testified that Plaintiff did not receive any psychological treatment after the collision, and he has not presented any symptoms to indicate that such treatment would be necessary. (Hrg. at 3:11).

While Plaintiff provided testimony indicating that multiple doctors agreed he would likely develop arthritis in the future, (Hrg. at 2:37, 3:04, 3:10-3:11, 3:26), there was no testimony regarding what medical care, if any, would be required to address the arthritis. *Cf. Rodriguez v. Larson*, 250 Fed. App'x 607, 610 (5th Cir. Oct. 11, 2007) (affirming award for future medical expenses where there was evidence that the plaintiff would require additional medical treatment including medications, diagnostic testing, doctor's visits, and a discogram). Absent this evidence, the

testimony does not show that Plaintiff would require any future medical treatment beyond a mere possibility.

The Texas Court of Appeals reversed an award for future medical expenses where the "testimony did not present evidence that the plaintiff would require any additional medical treatment beyond mere possibilities." *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 906 (Tex. App.—Texarkana 2004, pet. denied). In *Smoak*, the plaintiff, Smoak, testified as follows, "you don't really know, you know, once the hardware wears out or if the bone graft doesn't go-you know, you don't really never know." *Id.* at 905. Smoak's doctor testified that, like Plaintiff, Smoak would likely develop arthritic changes earlier than expected. *Id.* The testimony did not establish that in all reasonable probability Smoak would require future medical care. *Id.* at 906. Therefore, Plaintiff's likelihood of arthritis does not establish that in all reasonable probability he will require future medical care.

Because Plaintiff does not seek lost wages or lost earning capacity and does not meet the requirements for an award of any medical expenses, Plaintiff is not entitled to economic damages.

Accordingly, the Undersigned does not recommend the District Judge award Plaintiff economic damages.

### 2. Non-Economic Damages

Non-economic damages include compensation for pain, suffering, mental anguish, disfigurement, and physical impairment. *Golden Eagle Archery*, 116 S.W.3d at 763. Matters of pain and suffering, mental anguish, disfigurement, and physical

impairment are necessarily speculative. *See id.*; *see also Nowsco Services Div. of Big Three Industries, Inc. v. Lasman*, 686 S.W.2d 197, 200 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Accordingly, the factfinder is given broad discretion when determining such damages. *Southwest Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951–52 (Tex. App.—San Antonio 1997, no writ). "Despite this broad discretion, however, there must be some evidence to justify the amount awarded." *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 517 (Tex. App.—Houston [14th Dist.] 2016). Each category of non-economic damages is discussed below.

### (a) Pain and Suffering

Plaintiff seeks $1,000,000 for past pain and suffering, and $500,000 for future pain and suffering. As discussed below, Plaintiff should be awarded $255,000 for pain and suffering in the past and future.

### (i)    Past Pain

First, Plaintiff showed that he suffered physical pain in the past. An award for pain and suffering may be recovered upon a showing that physical pain was suffered in the past. *Morales*, 948 S.W.2d at 951–52. Evidence of physical pain may be shown by direct testimony or circumstantial evidence. *Id.* Certain types of injuries have objective manifestations that clearly support an award for pain and suffering. *Dollison v. Hayes*, 79 S.W.3d 246, 249–50 (Tex. App.—Texarkana 2002, no pet.). Injuries like bone fractures have been held to support an award of pain and suffering. *Id.* at 254 n.1; *see Fiske v. Fiske*, No.01-03-00048-CV, 2004 WL 1847368, at *3 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.) (evidence of broken leg,

two broken ribs, abrasions, and bruises supported award of $50,000 for physical pain and mental suffering).

Here, in addition to the medical records showing Plaintiff fractured multiple bones, (Dkt. No. 24-4 at 4), Plaintiff provided testimony regarding the physical pain he suffered after the collision. For instance, Plaintiff's Father testified that he received a call from Plaintiff moments after the collision had occurred. (Hrg. at 3:18). Plaintiff told him, "Dad, I'm okay. It just hurts a lot." (*Id.*). He went to the scene of the collision and observed Plaintiff on the ground unable to move his legs. (*Id.*). At the scene, Plaintiff told him that he was in a lot of pain. (Hrg. at 3:18-3:19).

Ms. Palafox testified that Plaintiff complained of pain during his transfer from Doctor's Hospital in Laredo, Texas, to Brooke Army Medical Center (BAMC) in San Antonio, Texas. (Hrg. at 2:57-2:58). She stated that Plaintiff took the pain medication prescribed to him about two or three times over the course of the first seven days following the collision, and afterwards he took Tylenol. (Hrg. at 3:08).

Plaintiff testified that the recovery process was "terrible." (Hrg. at 2:41). He began walking without crutches after about two months of physical therapy. (Hrg. at 2:42). He felt sharp pains when he would walk. (*Id.*). He was unable to walk without any pain for about four months, and he was unable to use his left arm without any pain for about three to four months. (Hrg. at 2:36, 2:42-2:43).

Accordingly, the Undersigned recommends the District Court award Plaintiff $250,000 for pain and suffering in the past.

### (ii)    Future Pain

Second, Plaintiff showed that he will suffer physical pain in the future. Damages for pain and suffering in the future may be recovered upon a showing that, based on a reasonable inference, physical pain will be suffered in the future. *Primoris Energy Service Corporation v. Meyers*, 569 S.W.3d 745, 761 (Tex. App.—Houston [1st Dist.] Dec. 13, 2018, no pet.) (op. on reh'g). "Evidence of continuing pain may support an award for pain and suffering in the future." *Flynn v. Racicot*, No.09-11-00607-CV, 2013 WL 476756 (Tex. App.—Beaumont, Feb. 7, 2013, no pet.). Here, Plaintiff testified that it has been over one year since the collision, and he continues to feel a painful "needle-like poke" on his ankle when he runs. (Hrg. at 2:44-2:47). Thus, Plaintiff's testimony supports an award for pain and suffering in the future.

Accordingly, the Undersigned recommends the District Judge award Plaintiff $5,000 for pain and suffering in the future.

### (b) Mental Anguish

Plaintiff seeks $500,000 for past mental anguish, and $50,000 for future mental anguish. As discussed below, Plaintiff provided sufficient evidence to support an award of $100,000 for past mental anguish. The evidence does not support an award for future mental anguish.

### (i)    Past Mental Anguish

Plaintiff showed he suffered past mental anguish. "Mental anguish is defined as intense pain of body or mind or a high degree of mental suffering." *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ.)). "It is more than

18

mere disappointment, anger, resentment or embarrassment." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). "Some types of disturbing or shocking injuries have been found sufficient to support an inference that an injury was accompanied by mental anguish." *Id.* This is because "[w]here serious bodily injury is inflicted, . . . we know that some degree of physical and mental suffering is the necessary result." *Id.* (quoting *Brown v. Sullivan*, 71 Tex. 470, 476, 10 S.W. 288, 290 (1888)).

Texas authorizes damages for mental anguish in virtually all physical injury actions. *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997). However, even when an occurrence is of the type for which mental anguish damages are recoverable, the plaintiff must present (1) "direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption to daily life;" or (2) "other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *SunBridge Healthcare Corp. v. Penny*, 160 S.W.2d 230, 251 (Tex. App.—Texarkana, 2005, no pet.) (citing *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)). The traumatic nature of an injury can be considered as a factor in deciding whether the evidence supports an award for mental anguish. *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 590 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (affirming award of $150,000 for past mental anguish sustained due to physical injuries).

Here, Plaintiff provided medical records and testimony showing how the nature, duration, and severity of his injuries substantially disrupted his daily

routine. The medical records indicate that Plaintiff was transferred to BAMC due to the severity of his injuries. (Dkt. No. 24-4 at 9). During the transfer, medical personnel observed Plaintiff become "increasingly agitated and anxious, pulling at lines and trying to get off the sled despite multiple fractures." (*Id.* at 7).

Jose Villarreal testified regarding his observation of Plaintiff after the collision. Mr. Villarreal stated that he had been running on Country Club Drive when he witnessed the vehicle lose control. (Hrg. at 2:20-2:21). He continued after the vehicle, walking about 15 feet when he saw Plaintiff who had been struck by the vehicle. (Hrg. at 2:21-2:22). Mr. Villarreal called 911, and Plaintiff gave him his father's phone number. (Hrg. at 2:22). Mr. Villarreal stated that Plaintiff appeared conscious and frightened because he remained quiet after providing his father's number. (Hrg. at 2:25-2:27).

Plaintiff's Father testified regarding his observation of Plaintiff before and after the collision. He stated that Plaintiff was a boy full of happiness, strength, and positivity; and he was a dedicated runner. (Hrg. at 3:15-3:16). At the scene of the collision, Plaintiff told him he was in a lot of pain and asked whether he would be okay. (Hrg. at 3:18-3:19). When Plaintiff woke up at BAMC, he was unable to remember what had happened, and he appeared scared. (Hrg. at 3:20-3:21). He had to explain to Plaintiff why he was in the hospital. (*Id.*). For about two weeks after the collision, Plaintiff required assistance to use the bathroom. (Hrg. at 3:22, 3:28). During those two weeks, Plaintiff cried a few minutes each day because he was concerned that he would never run again. (Hrg. at 3:22). He cried to his mother, his

father, and sometimes alone. (Hrg. at 3:29). Consistent with his father's testimony, Plaintiff testified that he woke up at BAMC feeling scared because prior to the collision, he had never been injured nor had he ever experienced pain in the areas he injured. (Hrg. at 2:34, 2:50).

The medical records and testimony of Mr. Villarreal, Plaintiff's Father, and Plaintiff provided direct evidence of the nature, duration, and severity of Plaintiff's injuries, and established a substantial disruption in Plaintiff's daily routine to the extent that he was unable run nor engage in other daily tasks that had previously allowed him to be the boy who was "full of happiness, strength, and positivity."

Accordingly, the Undersigned recommends the District Judge award Plaintiff $100,000 for mental anguish suffered in the past.

### (ii)   Future Mental Anguish

Plaintiff does not show that he will suffer mental anguish in the future. Damages for future mental anguish are recoverable only if there is a reasonable probability that mental anguish will be suffered in the future. *Hicks*, 834 S.W.2d at 590; *see Adams v. YMCA*, 265 S.W.3d 915, 916–17 (Tex. 2008) (remanding for new trial where jury failed to award future mental anguish when the same circumstances that produced some of the previous mental anguish are likely to recur).

Here, Plaintiff provided testimony indicating that the circumstances which caused his previous mental anguish are not likely to recur because his injuries healed. He testified that the metal parts placed in his arm and leg were permanent, indicating that he will not need surgery to remove them. (Hrg. at 2:37). He returned

to running, even participating in a half-marathon one week before the hearing. (Hrg. at 2:45-2:46). Although Plaintiff stated that running is sometimes traumatizing, he does not provide evidence of the nature, duration, and severity of this trauma other than his own testimony that he now tries to avoid running near streets and sidewalks. (Hrg. at 2:44, 2:48). However, Plaintiff himself admitted that he does not remember being struck by the vehicle, and he does run near those areas when necessary to access a trail. (Hrg. at 2:40). Additionally, it appears that Plaintiff may restrict his running to trails because he testified that his parents worry about him running near streets. (Hrg. at 2:48).

When evidence of the nature, duration, and severity of mental anguish is lacking, courts look to whether there is any evidence of a "high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger." *Ontiveroas v. Lozano*, No.14-05-00294-CV, 2006 WL 1140374, at *2 (Tex. App.—Houston [14th Dist.] Apr. 20, 2006, no pet.). Here, Plaintiff's fear of running near streets and sidewalks does not evidence mental anguish that is "more than mere worry, anxiety, vexation, embarrassment, or anger" but instead indicates he uses extra caution when he runs outdoors. Because there is no reasonable probability that Plaintiff will suffer mental anguish in the future, Plaintiff is not entitled to damages for future mental anguish.

Accordingly, the Undersigned does not recommend the District Judge award Plaintiff damages for future mental anguish.

### (c)Disfigurement

Plaintiff seeks $250,000 for disfigurement in the past. However, he fails to meet his burden because his complaint makes no demand for disfigurement. The Undersigned is aware that Plaintiff's complaint makes a demand for physical impairment. However, the Texas Supreme Court has indicated that physical impairment and disfigurement are separate damages because not all injuries constitute both a physical impairment and disfigurement. *See Kroger Co. v. Brown*, 267 S.W.3d 320, 326 (Tex. App.—Houston [14th Dist.] 2008) (turning head to engage in conversation due to hearing impairment is not a disfigurement because it is not a change in appearance). Absent a demand for disfigurement in the complaint, Plaintiff cannot recover any damages for disfigurement.

Accordingly, the Undersigned does not recommend the District Judge award Plaintiff damages for disfigurement.

### (d) Physical Impairment

Plaintiff seeks $1,000,000 for physical impairment in the past, and $1,000,000 for physical impairment in the future. As discussed below, Plaintiff can recover $50,000 for past impairment, and $5,000 for future impairment.

### (i)    Past Impairment

First, Plaintiff showed that he was physically impaired after the collision. Damages for physical impairment are recoverable if the party seeking the damages shows a physical impairment which "extends beyond any impediment to his earning capacity and beyond pain and suffering so that it produces a distinctly separate loss."

23

*PNS Stores*, 484 S.W.3d at 511. Texas courts have looked to whether (1) impediments to the plaintiff's non-work-related activities are obvious from the injury itself; or (2) the plaintiff produces some evidence of specific non-work related tasks or activities he can no longer perform." *Patlyek Brittain*, 149 S.W.3d 781, 787 (Tex. App.—Austin 2004, pet. denied). Impediments to the plaintiff's ability to run, play with children, and participate in recreational sports activities have been held to support an award for physical impairment. *See Plainview Motels, Inc. v. Reynolds*, 127 S.W.3d 21, 39 (Tex. App.—Tyler 2003, rehearing overruled) (finding plaintiff suffered a physical impairment because injuries restricted his ability to run, bicycle, participate in triathlons, and play with his boys); *Tri-State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 493 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (affirming award for physical impairment because the plaintiff was no longer able to play basketball or engage in other sports).

Here, Plaintiff presented testimony showing that his injuries impeded his ability to run and participate in marathons, both of which he enjoyed before the collision. Before the collision, Plaintiff enjoyed running around Laredo and participating in marathons. (Hrg. at 2:49, 3:17). He was training for a marathon that was scheduled to take place the weekend following the collision. (Hrg. at 3:17). He also had plans to run in Mexico City. (Hrg. at 3:17). Just before the collision, he received an email from a college coach, inviting him to run with the team. (Hrg. at 2:29-2:30). After the collision, Plaintiff's plans to run in any marathon were postponed

for at least a year, (Hrg. at 2:45), and he was never able to run with the college team, (Hrg. at 2:48).

Accordingly, the Undersigned recommends the District Judge award Plaintiff $50,000 for past impairment.

### (ii)    Future Impairment

Second, Plaintiff showed that he will be physically impaired in the future. Texas courts have allowed an award of future impairment where there was evidence that the plaintiff had an increased likelihood of developing arthritis. *See Pena v. Guerrero*, No. 04-19-00874-CV, 2020 WL7232136 (Tex. App.—San Antonio Dec. 9, 2020) *citing Blankenship v. Mirick*, 984 S.W.2d 771, 777-78 (Tex. App.—Waco 1999, not pet) (affirming $5000 for future physical impairment where there was increased likelihood of developing arthritis). Here, Plaintiff's mother testified that doctors stated Plaintiff will likely develop arthritis when he reaches 40 or 50 years old. (Hrg. at 3:10). Thus, Plaintiff is entitled to an award for future impairment.

Accordingly, the Undersigned recommends the District Judge award Plaintiff $5,000 for future impairment.

### 3.  Exemplary Damages

Texas allows an award of exemplary damages if the party proves that the harm for which the party seeks recovery of exemplary damages results from gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.008. The Civil Practice and Remedies Code limits the amount of exemplary damages which a court may award. *Id.* The exemplary damages are capped at the greater of $200,000, or two times the amount

of economic damages, plus an amount equal to any noneconomic damages found by the factfinder, not to exceed $750,000. *Id.*

Section 41.010 instructs the court to consider the purpose of exemplary damages before making an award. *Id.* at §41.010. Exemplary damages function to deter and punish. *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 901, 804 (5th Cir. 1983). The amount awarded must be reasonably proportioned to actual damages, though no set ratio exists for measuring reasonableness. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). Thus, courts have discretion to assess damages which reflect the particular facts of the case. *Id.* In determining the reasonableness of an award, courts consider the following six factors: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, 94) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* Exemplary damages are "presumptively reasonable" if the award is within the statutory limits. *Peco Const. Co. v. Guajardo*, 919 S.W.2d 736, 742 (Tex. App.—San Antonio 1996, writ denied).

Considering these factors, and taking all of Plaintiff's allegations as true, as Defendant is in default, Plaintiff should be awarded exemplary damages in the amount of $225,000. Defendant was grossly negligent when he drove his vehicle in an unsafe manner while under the influence of alcohol. As a result of his gross negligence, he lost control of his vehicle and struck a pedestrian, severely injuring him. Rather than rendering aid, Defendant continued driving.

Accordingly, the Undersigned recommends the District Judge award Plaintiff exemplary damages in the amount of $225,000

### 4. Prejudgment Interest

Plaintiff is entitled to prejudgment interest on his damages award. Generally, "[p]rejudgment interest should apply to all past injuries, including past emotional injuries." *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 372 (5th Cir. 2002). "Under Texas law, prevailing parties receive prejudgment interest as a matter of course." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994). "[I]n diversity cases, . . . pre-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). In Texas, "[t]he prejudgment interest rate is equal to the postjudgment interest rate applicable at the time of judgment." TEX. FIN. CODE § 304.103. The postjudgment interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation." *Id.* § 304.003(c)(1). The "prejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and end[s] on the day preceding the date judgment is rendered." *Id.* § 304.104; *see also Dallas Cty. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 50 (Tex. App.— Dallas 2012, pet. denied) ("Prejudgment interest is calculated up to the date of judgment and is then included as part of the final judgment.").

Currently, the prime rate is 8.25 percent. Accordingly, Plaintiff can recover prejudgment interest at a rate of 8.25 percent per annum for the time period between the date the lawsuit was filed until the day before the District Court enters judgment.

### 5.  Postjudgment Interest

Plaintiff is also entitled to postjudgment interest on the amount of his judgment. Federal law governs the postjudgment interest rate. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010); *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594 (5th Cir. 2006). The federal postjudgment interest rate is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment.[5] This rate may change, however, depending on when judgment is entered by the District Court.

Accordingly, the Undersigned recommends the District Judge consult the Federal Reserve Statistical Release table of selected interest rates, available at the website listed in footnote 5, to determine the appropriate post-judgment interest rate for this action depending on when judgment is entered.

### IV.   RECOMMENDATIONS

The Undersigned **RECOMMENDS** the District Court grant Plaintiff's Motion for Default Judgment (Dkt. No. 18) and enter judgment in favor of Plaintiff in the amount of $635,000 in damages plus prejudgment interest calculated at a rate of 8.25 percent per annum. Postjudgment interest shall accrue on the total amount of the

---

[5] https://www.federalreserve.gov/releases/h15/

judgment awarded to Plaintiff at the applicable rate from the date of this judgment until it is paid in full.

<u>NOTICE TO PARTIES</u>

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED ON June 12, 2023, at Laredo, Texas.

CHRISTOPHER DOS SANTOS
UNITED STATES MAGISTRATE JUDGE